28 C.C.P.A.(Patents)

### KENYON v. CRANE.
#### Patent Appeal No. 4400.

Court of Customs and Patent Appeals.
June 9, 1941.

HATFIELD, Associate Judge, and GARRETT, Presiding Judge, dissenting.

Ernest F. Wenderoth, of Washington, D. C. (Herbert H. Thompson, of Brooklyn, N. Y., and Paul B. Hunter, of Brooklyn, N. Y., of counsel), for appellant.

J. F. Mothershead, of Washington, D. C. (Frank H. Harmon, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences awarding priority of invention of the subject matter defined in the two counts in issue—Nos. 3 and 4—to appellant Theodore W. Kenyon.

The interference is between appellant's application, serial No. 736,566, filed July 23, 1934, and appellee's application, serial No. 9,689, filed March 6, 1935.

The invention defined in the counts in issue relates to a directional indicator for aircraft.

The interference, as originally declared, consisted of four counts, reading as follows:

"Count 1. In a flight instrument for aircraft the combination of means for indicating a turn of the craft, an air driven turbine for actuating said indicating means

and means responsive to rate of turn for regulating the air drive of the turbine to actuate said indicating means whereby the latter indicates the rate of turn integrated with respect to time.

"Count 2. In a flight instrument for aircraft the combination of means for indicating a turn of the craft, a turbine for operating said indicating means, air jet means for driving the turbine, and gyroscopically controlled means responsive to rate of turn for regulating the air jet drive of the turbine.

"Count 3. A directional indicator for aircraft showing the direction and amount of deviation from course, comprising a constrained gyroscope mounted for precession through an angle proportional to the rate of turn of the craft, a fluid driven indicator and fluid actuated means controlled by the precessional position of said gyroscope for turning said indicator at a rate and direction proportional to the extent of precession of said gyroscope, whereby said indicator shows the amount of course change.

"Count 4. A directional indicator for aircraft showing the direction and amount of deviation from course, comprising a constrained gyroscope mounted for precession through an angle proportional to the rate of turn of the craft, an air turbine, air flow means adapted to drive the same in either direction at variable rates, and means turned by the precession of said gyroscope governing said flow means to drive said turbine at a rate and direction proportional to the extent of precession thereof, and an indicator actuated by said turbine."

Counts 1 and 2 originated in appellee's application, and counts 3 and 4 in appellant's application.

After the interference was declared, another count (No. 5) was added on motion of appellant, reading as follows: "Count 5. An aircraft flight instrument comprising a turn indicating member, an air driven turbine operatively connected to the member for actuating the member, means for pneumatically driving the turbine, gyroscopically controlled means responsive to rate of turn for regulating the pneumatic drive according to the right and left turn of the supporting aircraft, and means magnetically damping the turbine, whereby to actuate the turn indicator for designating degree of turn."

As to this count judgment on the record was entered against appellee, from which no appeal was taken by him to the Board of Appeals.

It will be observed that counts 1 and 2 are limited to a device for "indicating a turn of the craft," while counts 3 and 4 embrace a "directional indicator for aircraft showing the direction and *amount* of deviation from course." (Italics ours.)

■ Appellee is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

Counsel for appellee moved to dissolve the interference as to counts 3 and 4 on the ground that appellant had no right to make the claims constituting the counts in issue. The motion was denied by the Primary Examiner.

Considerable evidence was introduced by the parties, some of which was directed to the issue of the right of appellant to make the claims constituting the counts in issue. The Examiner of Interferences, however, declining to pass upon that issue, stated in his decision that as the Primary Examiner had held that appellant's application disclosed the subject matter defined in the counts here involved and as no "additional evidence or arguments" were "before the Examiner of Interferences other than those previously presented" he was precluded by the provisions of rule 130 of the Rules of Practice in the United States Patent Office from considering and deciding that issue. After reviewing the evidence, the Examiner of Interferences apparently held that appellee was the first to conceive the invention but that he had failed to establish an actual reduction to practice, and that as he had not established diligence in reducing the invention to practice at the time appellant filed his application, July 23, 1934, appellant was entitled to an award of priority of invention of the subject matter defined by the counts then in issue.

On appeal the Board of Appeals affirmed the decision of the examiner awarding to appellant priority of invention of the subject matter of counts 1 and 2, and reversed his decision with respect to counts 3 and 4, the ground of such reversal being that appellant's application does not disclose the subject matter defined in said last-named counts. From the decision of the board with respect to counts 3 and 4 appellant took the appeal before us.

The sole issue before us, as stated by counsel for each of the parties, is whether the counts are readable on appellant's disclosure. If they are, the decision of the Board of Appeals should be reversed. If they are not, the decision should be affirmed.

It was the contention of counsel for appellee before the Primary Examiner and the Board of Appeals, and it is their contention here, that appellant does not disclose in his application "A directional indicator for aircraft *showing the * * * amount* of deviation from course," as called for by each of the involved counts. (Italics ours.)

It is not contended here that appellant's application does not disclose the other structural elements defined in the counts in issue.

It is stated in appellant's application that the instrument disclosed therein is intended to aid the pilot of an airplane in "blind flying" by indicating any turning movement of the craft from its normal course, and that for this purpose appellant discloses an illuminated screen so arranged with other structural elements that an image in the form of "checkered squares" is projected upon the screen, which image is normally stationary; that is, it is stationary until a turning movement of the aircraft occurs.

The details of appellant's device need not be set forth here. It is sufficient to say that the image is projected upon the illuminated screen by the use of an "interrupted surface located in the path of light which illuminates the screen." The "interrupted surface" is "in the form of a peripheral toothed disk," every fifth tooth on the disk being "foreshortened" to cause an "interruption of the image or a darkening" of the series of checkered squares on the screen. When the aircraft deviates either to the right or left of its normal course, the image is instantly animated and passes across the screen so as to "visually indicate to the pilot the occurrence of a change or deviation from the course." Appellant states in his application that as "this movement is comparable in its rate to the rate of turn, the pilot is enabled *to determine* by watching the movement of the image the approximate extent to which the turning movement has changed the course of the ship and generally locate his position thereby." (Italics not quoted.) When the ship has been turned back to its normal course,

the image on the screen again becomes stationary. Appellant also states in his application that "In all cases where blind flying is required due to lack of visibility, this ability to determine the extent of any turning movement is important. This is particularly true in approaching a landing field, where the general position of the craft with respect to the field may be located by a two-way radio. Appropriate directions from the field coupled with the indication of position afforded by the image, affords the pilot sufficient information to in all probability make a successful landing, even in those cases where there is a total lack of visibility. * * * *By observing the image and coordinating the number of interruptions which traverse the screen, he [the pilot] can readily estimate the extent to which the turning movement has altered the original direction of the craft. Obviously the number of interruptions corresponding to any given angle of turn would depend on the adjustment of the instrument and the number of toothed spaces at which interruptions occur.* With the number of interruptions which correspond to any given angle [of turn] once determined, however, the instrument functions to provide a sufficiently accurate measure of the turning movement." (Italics ours.) It is further explained in appellant's application that the movement of the toothed disks or image across the screen corresponds to the rate of turn and that by counting "the number of interrupted squares which pass before him" the pilot "can readily gauge the amount of the turning movement" of the aircraft.

It is apparent from appellant's application and from the evidence of record that appellant's instrument may be so adjusted that as each of the foreshortened teeth passes across the screen and causes an interruption of the image thereon, a ten-degree turn is indicated. It is also apparent from appellant's application and from the evidence of record that it is necessary in the use of appellant's instrument that the pilot watch the image on the screen in order that he may be informed that his craft is turning from its normal course, and that he must at least count the number of "foreshortened" teeth passing across the screen in order that he may be informed as to the amount of deviation from his course. However, if the instrument is accurately adjusted, it is evident that by observing the image on the screen

and counting the number of interrupted squares which pass across the screen, the pilot is informed as to the amount of deviation from course as well as the direction.

That appellant's application discloses an instrument showing the direction of deviation from course, is not questioned here.

In his decision holding that appellant's application discloses a directional indicator for aircraft which shows the amount of deviation from course, the Primary Examiner said:

"From a reading of the Kenyon specification it is obvious that the mutually normal, interrupted bars of light thrown upon the screen by the projector and interposed toothed discs constitute indications and that the number of said bars crossing the field of view during a given turn is proportional to the angular extent of said turn. On Page 13, line 18 et seq. of his application Kenyon explains that 'By watching the movement of the image and counting the number of such interruptions which pass across the screen, the pilot can readily estimate the extent to which the craft has been turned from its original course at any given instant.'

"As this statement is thought substantially correct, it is believed unnecessary to satisfy the terms of the counts, that Kenyon be required to show graduations on the teeth 144 or adjacent the field of view thereof. It is sufficient if the pilot can determine the turn, to a degree of accuracy, by noting the number of tooth shadows passing across the field of view. For these reasons it follows that Crane's motion to dissolve must be and accordingly is, denied."

In its decision holding that appellant's application did not disclose a directional indicator for aircraft showing the amount of deviation from course, the Board of Appeals said:

"Claims 24 and 25 of Kenyon, corresponding to counts 3 and 4, were introduced by amendment C into the Kenyon application one day before the Crane application was filed. By amendment D it is clear that Kenyon's position is that the image is the indicator. The image is apparently one of a series of checkered squares referred to in amendment D² and in Kenyon's brief as vertical black and white bars. Certain of these squares are interrupted at regular intervals and by watching the number of the interruptions which pass across the screen, the pilot can estimate the angle of turn.

"Kenyon's so-called indicator or image *does not make or provide a mark, record or sign to indicate the position of the craft relative to a course.* The position of the craft can only be estimated, because with Kenyon's arrangement no zero point of reference is possible. There was something said at the hearing of using element 186 as a reference point. Kenyon's application on which the claims must be based makes no such contention, but even if 186 were used as a zero point, there is no zero image to go with it.

"In brief, counts 3 and 4 cannot be read on the Kenyon application disclosure. Kenyon's exhibits do not change the situation as to his right to make the counts nor does Kenyon's argument that Crane cannot make the counts.

"The question of Crane's right to make the counts is not before us but we might state that Crane does show a reference line 55 for reading off degrees of the compass card. Saunier's testimony (XQ.'s 112 and 113, pages 64 and 65, Crane's Record) refers to a change in Exhibit 12 *which probably would permit an indication of the amount of deviation from course.*" (Italics ours.)

The board was mistaken as to the time appellant made claims corresponding to counts 3 and 4. They were made nearly one year after appellee's application was filed, but we deem this fact to be immaterial as there is no suggestion that at the time of filing said amendment appellant had any knowledge of appellee's application.

Appellee's directional indicator differs materially from that of appellant. It comprises an indicating dial and, among other things, a rotatable calibrated disc, calibrated, as stated by counsel for appellee, "in terms of from 0 to 7 with corresponding degree indications from 0 (or 360) to 315," hence, the naught is directly above the zero point, the numeral 1 above the 45 degree marking, the numeral 2 above the 90 degree marking, etc. When the aircraft deviates from its course, the calibrated disc rotates to the right or left, depending upon the direction of deviation with respect to the stationary zero point which serves as a "lubber's line" for reading off the degree markings which appear on the disc. Accordingly, when appellee's instrument is used and the plane deviates

from its normal course to an extent of 45 degrees for example, the pilot, by merely observing the instrument, is informed that his craft is off its course to the extent of 45 degrees and it is unnecessary for him to watch the instrument constantly. However, if the aircraft deviates from its course to a degree between the degrees shown on the calibrated disc, the pilot must in part estimate the amount of deviation, although, in order to return to the normal course, it is only necessary to turn the craft until the dial shows the cipher to be directly over the zero point or the "lubber's line."

However, the comparative merits of the two instruments is not the issue before us. The question here to be determined is whether appellant's application discloses a directional *indicator* for aircraft *showing the amount* of deviation from course.

It is suggested, although not argued, in the brief of counsel for appellant that the first clause in each of the appealed claims, which reads "A directional indicator for aircraft showing the direction and amount of deviation from course," is merely an introductory clause and is not to be regarded as a structural limitation of the invention defined by the counts.

■ We think it is sufficient to say that the introductory clause in each of the counts in issue is clearly an essential element of the invention defined by the counts, and is not merely introductory for the purpose of explaining the environment in which the other structural elements of the counts are designed to be used (Clarence A. Hall v. Genzo Shimadzu, 59 F.2d 225, 19 C.C.P.A., Patents, 1288; In re Buttolph, 73 F.2d 936, 22 C.C.P.A., Patents, 802, and that the instant case is clearly distinguishable from the decisions in the cases of Lorenz K. Braren v. George Horner, 47 F.2d 358, 18 C.C.P.A., Patents, 971; In re Beplate et al., 77 F.2d 506, 22 C.C.P.A., Patents, 1232; · Deutsch et al. v. Ball, 77 F.2d 930, 22 C.C.P.A., Patents, 1322; In re Mason, Deceased, 94 F.2d 220, 25 C.C. P.A., Patents, 873.

■■ It is well settled that counts in an interference should be given the broadest construction their language will reasonably permit, but that expressly defined limitations cannot be ignored. Furthermore, in the event the language of a count or a vital term therein is susceptible of more than one construction or interpretation, as the case may be, and, therefore,

ambiguous, the meaning to be given to such language or term must be that disclosed in the application in which the counts originated.

■ It is our opinion that there is nothing ambiguous in the phrase of each of the counts: "A directional indicator for aircraft showing the direction and amount of deviation from course."

The term "indicator" is defined in Webster's New International Dictionary, 2d Edition, as follows:

"indicator * * * *n.* * * * 1. One that shows or points out; an indication or sign.

"2. Specif., any device or apparatus, usually automatic in action, for indicating something; as *a* An index hand or pointer. *b* A gauge, as to show pressure. *c* A speed counter for an engine. *d* A registering dial, as on a dial telegraph, or in a railroad station to show the positions of trains. *e Eng.* In some libraries, a device indicating whether a book is out or in."

Obviously the term as used in the counts is in the sense of the definition above given under (2).

Funk & Wagnalls New Standard Dictionary defines the term "indicator" as follows:

"indicator * * * *n.* 1. One who or that which indicates or points out.

\* \* \* \* \*

"Specif. Any contrivance or apparatus, automatic or otherwise, which makes a mark, record, or sign to indicate the condition or position of something; as (1) a water-gage; (2) a speed-indicator for an engine; (3) dials showing the position of elevators, cages in a mine-shaft, etc; (4) devices for recording the arrival and departure of trains, the number of fares collected in street-cars, or for testing the running of spindles for any eccentricity, etc."

The terms "show" and "showing," according to the same dictionaries, have various meanings, depending upon the context with which they are used. Upon the question before us the term "showing," as used in the counts, must be considered in connection with the term "indicator."

In other words, the counts call for an indicator which shows the amount of deviation from course, and among the many definitions of the terms "show" and "showing" given by Webster's and Funk & Wagnalls dictionaries above referred to, we find

one that, in our opinion, is appropriate when the term "showing" is used in connection with the term "indicator," viz., to "give an indication by record; as, a clock shows the hour." (Webster).

A clock is an indicator of time. If the hour hand were to be removed from the face of a clock, we do not think it could be claimed that the clock shows the hours of the day because one could watch the minute hand, count its revolutions around the face of the clock, and, from knowing the hour when he began observation, compute the hours of the day by the number of revolutions which the minute hand had made.

Another illustration is the speedometer of an automobile. Undoubtedly in the pioneer days of speedometers the first invention was that of registering the speed per hour when placed in an automobile, with no registering of the distance travelled. Later, no doubt, came the invention of registering such distance. With a speedometer registering only the speed per hour, one by constantly observing the instrument and maintaining it at a constant speed, could, by also consulting his watch at the beginning and at the end of his trip, compute the distance travelled; but could it therefore be said that a speedometer showed the distance travelled when it registered only the speed per hour? We think not, and yet it seems to us that appellant's disclosure is of the same character.

Surely the man who first invented a speedometer merely showing the speed per hour travelled would not be entitled to a patent including a claim for a speedometer showing not only the speed per hour but also showing the distance travelled.

If the eye of the pilot is distracted for the merest moment during a turn, even by computation he could not determine the amount of the turn for he could not know how many times the illumination of the screen had been interrupted.

We are in agreement with the view of the Board of Appeals that appellant's application does not disclose an indicator showing the "amount of deviation from course"; and to award him priority of invention of the subject matter of counts 3 and 4 would reward him for an invention which he has not disclosed.

Appellant discloses no structure to support counts 3 and 4 different from that disclosed by him to support counts 1 and 2. Priority of invention of the subject matter of counts 1, 2 and 5 has been awarded to appellant, and in our opinion these counts embrace the full measure of the invention disclosed by appellant in so far as this interference is concerned.

We are of the opinion that the Board of Appeals came to the right conclusion, and its decision is affirmed.

Affirmed.

HATFIELD, Associate Judge (dissenting).

As stated in the majority opinion, the terms "show" and "showing" have various meanings, depending upon the context in which they are used. For instance, they mean to "exhibit," "display," "disclose," "reveal," "make known," "explain something," "teach," "inform," "instruct; as, he showed me how to solve the problem"; to make "apparent or clear by evidence, testimony, or reasoning; to prove; demonstrate; as, to show the truth of a statement; to show that the sun moves"; to "constitute evidence or proof of; indicate; as, his clothes show bad taste"; to "make known the way to (a person); hence, to direct; guide; usher; conduct; as, to show a person into a parlor; to show one to the door"; to "give indication of by record; as, a clock shows the hour; industrials show an advance." Synonyms for the word "show" are: "Manifest, betoken, demonstrate, evidence, divulge; lead, escort." Webster's New International Dictionary, Second Edition. For further illustration of the use of the words "show" and "showing," see 39 Words and Phrases, Permanent Edition, pp. 240 to 246, inclusive.

It appears, therefore, that the words "show" and "showing" mean to make apparent or clear, either to the eye or to the understanding or to both, by display, by evidence, by illustration, or by other means.

It is stated in the majority opinion that the term "showing" is not ambiguous when used in connection with the phrase "A directional indicator for aircraft," and that when interpreted in the light of that phrase it means to "give an indication by record; as, a clock shows the hour."

The only markings on appellee's indicator to show the amount of deviation from course are 0, 45, 90, 135, 180, 225, 270, and 315 degrees. Accordingly, if an aircraft upon which appellee's directional in-

dicator is used deviates from course to a degree not shown on the calibrated disk, that is, for example, to a degree between the cipher, which is directly over the zero point or the "lubber's line," and the forty-five degree marking on the disk, then the pilot can only estimate the amount of deviation, the indicator does not show it.

Now, of course, "a clock shows the hour." But appellee's indicator, if I may pursue the analogy of the majority, is somewhat similar to a clock without a minute hand, such a clock does not show the "hour" in the common understanding of that term; that is, it does not show the "time of day as expressed in hours and minutes." Webster's New International Dictionary.

Appellant's directional indicator does not "give indication * * * by record" of either the direction or the amount of deviation from course in the sense that "a clock shows the hour" of day.

Accordingly, it would seem to be clear that if the term "showing" be given the interpretation placed upon it by the majority of the court neither of the parties can make the claims constituting the counts in issue.

I am of opinion that the term "showing," as used in the counts in issue, is ambiguous and, therefore, should be interpreted in the light of appellant's application.

It is clear from appellant's application that his directional indicator for aircraft discloses to an observing pilot both the direction and the amount of deviation from course. It is true that in order that the pilot be informed of the amount of deviation from course he must have knowledge of how appellant's indicator is adjusted, but, having that knowledge and counting the number of long or, when necessary, the number of "foreshortened" teeth passing across the screen, he is informed as to the exact number of degrees the craft has deviated from its course. Accordingly, construing the language "A directional indicator for aircraft showing the direction and amount of deviation from course" in the light of appellant's application in which the counts in issue originated, I am of opinion that appellant's application discloses an indicator which shows the aircraft pilot the amount as well as the direction of deviation from course; that appellant is entitled to make the claims corresponding to the counts in issue; and that the decision

of the Board of Appeals should be reversed.

I am authorized to say that Presiding Judge GARRETT concurs in the views herein expressed.