Garrett, Presiding Judge,
delivered the opinion ‘of the court:
This is an appeal from the decision of the' Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences awarding priority to the party Davis in an interference declared between an application of Davis filed June 26, 1935, and an application of Lawson filed October 21, 1935. The application of
*1218 Davis., serial No. 28,463, was a continuation in part of an earlier application, serial No. 759,831, filed December 31, 1934.
Four counts are involved in the controversy, of which we quote counts 1 and 3 for illustrative purposes. They are:
1. In an article of hosiery, a leg1 portion comprising a body having a top, said top being plain knit of inelastic fabric and having an elastic thread locked ,to spaced wales in each of a plurality of spaced courses, the normal length of elastic thread floated between said spaced wales being less than the normal length of the corresponding portion of the fabric to draw in the inelastic fabric both at and between elastic carrying courses.
■ 3. A knitted article of apparel, comprising a plurality of courses of plain fabric formed from a fabric thread of uniform diameter and an elastic thread knitted into corresponding spaced wales in each of a plurality of equally spaced courses of the fabric, the normal length of the elastic thread floated between each of said spaced wales being less than the normal length of the corresponding ■portion of the fabric to provide a series of parallel longitudinal rib-like ridges in the fabric.
The Examiner of Interferences described the invention in general terms as follows:
The subject matter of this interference involves a knitted article of apparel ,or hosiery. The article is plain knit and elastic thread is knit in spaced courses and at space wales with the resultant effect that in any one course .elastic is attached at spaced wales and floated between to give a resilient gripping action which tends to hold the garment in place in the body. If the spaced wales are vertically arranged in columnar form a rib effect is given which ■simulates true rib-knit fabrics enhancing salability of socks when this type <of fabric is utilized as a garter-top.
Counts 1, 2, and 4 begin with the phrase, “In an article of hosiery," while count 3 begins, “A knitted article of apparel.”
The Examiner of Interferences pointed out that, “In counts 1 and 2 the method of elastic thread attachment as defined as ‘locking’ while in counts 3 and 4 the elastic thread is said to be ‘knit-in.’ Counts 2 to 4 require that the elastic-thread attachment at spaced wales be arranged so that upon contraction of" the elastic continuous vortical ribs of plain knit fabric are formed over a substantial portion of the fabric,” and, said:
In this connection it might be well to distinguish between the terms “lucked” and “knit-in” and “laid-in” as they are understood to be interpreted by the knitting art. The term “locked” appears in counts 1 and 2 and “knit-in” as applied to the elastic thread attachment appears in counts 3 and 4.
The term “lock” appears to be generic to both “knit-in” and “laid-in.” By “knitting” it is understood that th'e operation constitutes drawing a loop of thread through another loop. The thread is required to be fed so that the needle latch will retain it in the crotch of the needle as the needle is drawn down through a loop. Should the elastic thread be fed underneath the needle latch it will be cast off as the latch closes over the non-elastic thread but will be attached by and between the vertically arranged loops of plain fabric. * * *
*1219 After the foregoing analysis and a discussion of the respective Davis applications, which discussion need not be repeated, Davis was awarded the filing date of serial No. 759,831 (December 31, 1934) for constructive reduction to practice of counts 1 and 2 and the filing date (June 26, 1935) of serial No. 28,463 (a continuation in part of No. 759,831) for constructive reduction to practice of counts 3 and 4. Davis, in his preliminary statement, alleged earlier dates and introduced evidence purporting to substantiate them, but the tribunals of the Patent Office held it unnecessary to consider such evidence in view of the conclusion reached with respect to the Lawson side of the controversy.
In his preliminary statement Lawson alleged actual reduction to practice of count 3 in June 1934, and of counts 1, 2, and 4 in July 1935. The testimony introduced on his behalf, however, relates, as is stated in the decision of the Examiner of Interferences, “almost in its entirety to activities of Lawson in June, July, August and September of 1934 * * The Examiner of Interferences held that what was shown to have been done at that time did not constitute a reduction to practice of any of the counts and declared it “unnecessary to determine the sufficiency of Lawson’s testimony concerning his 1934 activities to establish prior conception,” because there was no proof of diligence on his part during the critical period.
The board seems to have gone further respecting the question of Lawson’s conception and to have held that he had failed to prove even conception prior to the Davis filing dates.
However that may be, we may say at this point that whether or not conception might be awarded Lawson prior to the Davis filing-dates, there is no proof of diligence on Lawson’s part — indeed, there is no serious contention to that effect on his behalf — and the decision must turn on the matter of reduction to practice.
While there is an extensive record in the case, much testimony having been taken, the issue seems to us, after careful examination of the record and the briefs, to be comparatively easy of determination.
As has been stated, count 3 refers broadly to an article of apparel, and counts 1, 2, and 4 specify an article of hosiery. It was pointed out by the board that, “The only article disclosed in the Lawson application is a garter top stocking knitted to provide a garter section.” [Italics quoted.]
The record does not disclose that Lawson ever knitted a compleAe “article of apparel,” or a complete “article of hosiery,” or a “garter section,” corresponding to the counts.
It appears to be fairly proved that during the period referred to (June, July, August, and September 1934) Lawson, or others acting under his direction, knit, or laid, elastic threads (known by the trade *1220 name of “Lastex”) into the bodies of fabrics, “in spaced courses and at spaced wales.” This was done on a so-called Banner hotly or imdenoear knitting machine, built by Lawson’s assignee, referred to generally throughout the record as the Hemphill Company, with which company Lawson was connected. The machine, according to the testimony, was 18 inches in diameter and the fabrics produced on it, supposedly, were tubular in shape. The fabrics then produced were not preserved, so far as the record discloses, and no samples of them were placed in evidence.
Just how much fabric was knitted on the “underwear” machine from time to time cannot be determined from the record. Lawson testified respecting what was knitted, etc., prior to August 3, 1934 (there is no showing of- later production of importance here), as follows:
According to my present recollection about six incbes to a foot of fabric were knitted on tbe various needle setups and one to two yards knitted where tbe rubber yarn was laid in rather than knitted in. That is I mean six inches to a foot of various fabrics. The rubber being fed to different needle setups and six inches to a foot of fabric being knit from each needle setup.
There is testimony to the effect that a machine for knitting hosiery would operate in substantially the same manner as one for knitting underwear, or other wearing apparel of the knitted, or “laid-in” type, but, as has been said, there is no evidence that Lawson, or any one acting for him or under his direction, knitted any hosiery or even a “garter section” of a hose, and, as of course, no complete article having been made, none could have been tested by trying it on the person. Even the fabric, which possibly might be regarded as a part of an article, was not so tested.
While neither of the Patent Office tribunals made any specific . comment upon the fact that Lawson failed to prove the production of any complete knitted article of apparel, hosiery, or even a garter section of hosiery, recognition of that fact is implicit in their respective decisions, as we interpret them, and, as best we can deduce from the arguments on behalf of Lawson, his counsel so interpreted them. Counsel contended below, as they contend here, that the invention lies in the fabric per se. Hence, they insisted below, as they insist here, that the counts should be interpreted broadly enough to include the fabric, and, in effect, that the introductory phrases should not be regarded as pertinent limitations. With respect to this contention, the board said:
Lawson points out that tbe real invention is in tbe knitted, fabric per se. Tbe fabric is covered in some of Lawson’s broad claims 6ut these claims stand rejected on prior art. [Italics ours.] '
The foregoing finding is not challenged.
*1221 It would seem obvious, therefore, that if the instant counts were given the interpretation for which Lawson contends they, too, would be rejectable on prior art. However that may be, we have no doubt that the introductory phrases here define the invention and must, therefore, be regarded as vital and controlling limitations. In the cases of Clarence A. Hall v. Genzo Shimadzu, 19 C. C. P. A. (Patents) 1288, 59 F. (2d) 225, we stated: “Generally speaking, it is well established that an introductory phrase will not be considered as a part of the subject matter of a claim, but there are exceptions to this rule,” and held, citing authorities, that that case presented such an exception, declaring that the introductory phrase there involved was “necessary ‘to give life and meaning and vitality’ to the counts.” A parallel situation, in our opinion, exists here.
Counsel for Lawson have placed much reliance upon a patent No. 1,843,086 (Lawson’s Exhibit 10), issued to him in January 1932, upon an application filed in December 1930, some of the claims of which covered hosiery having an elastic section, as showing that the use of the fabric produced in 1934 was obviously adapted for garter-top hosiery, and required no actual use to establish reduction to practice. Both tribunals of the Patent Office took due note of the patent and the contentions of Lawson concerning it. The statement of the Examiner of Interferences as to the reasons requiring an actual test is more elaborate than that of the board and we reproduce it, in part, as follows:
The counts all call either ior “an article of hosiery” or “a knitted article of apparel” and it is clear from. the specifications of both applicants here involved and the testimony of the several witnesses that the fabric or hosiery was of such nature as to be held to the body or leg of the wearer by the contraction of the elastic, this being its primary function in addition to its secondary function of providing a simulated rib-knit structure.
Elastic fabric incorporating woven-in-elastic thread which is designed to provide a gripping means to retain the (stocking) fabric in place satisfactorily on the body or limbs of a wearer is old in the art as shown by Lawson’s prior patent exhibit 10, and so far as the record goes this type of use is the only one to which such a fabric would be normally placed. It is believed fairly obvious therefore that a new elastic fabric of this general type could not be said to have been satisfactorily reduced to practice unless it were first worn and its body gripping properties thus observed. Furthermore, Lawson’s own testimony indicates that with this new type of fabric as distinguished from the prior art patent Lawson exhibit 10 there is distinct necessary for a test of the wearing and fitting properties:
Q. 29. Were the fabrics which you have inspected as you have just testified acceptable fabrics in your opinion, or were they not? I am referring specifically to their application to hosiery tops as illustrated in your patent 1,843,086, Lawson Exhibit No. 10.

A. During the making of these fabrics I was upset by the extreme roughness of these fabrics on the inside and I considered that they would be irri *1222 tating to the skin. With this in mind, our work on fabric containing rubber was concentrated on fabrics where the rubber would not come in contact with the skin and patent No. 1,843,086 is an example. Otherwise, the fabrics were of- an acceptable nature in my opinion at that time.
It may be noted that the structure of the counts is directed to fabric in which the elastic contacts the skin of the wearer with the accompanying possibility of irritation and thus the necessity of a test to determine its satis-factoriness in this respect becomes even more significant and can not be satisfied by mere production and inspection of the article prior to actual use. Overmire v. Fahrenwald, 277 F. 618. Nor can it be said that simiplieity or obviousness of application is sufficient to excuse the lack of a satisfactory demonstration of utility, Hadley v. Ellis, 258 Fed. 984; Lowrie v. Taylor and Taylor, 118 O. G. 1681; 1905 C. D. 400.
Other arguments on Lawson’s behalf have received our full and respectful consideration. He is shown by the record to have had long experience in the knitting art and to have been a prolific inventor in that field, and the witnesses called to corroborate his testimony as to: his activities in 1934 are also shown to have been experienced in the art, and one argument of his counsel means, as Ave view it, that because of the knowledge which he and the other Avitnesses possessed respecting the art, and because they felt confident that a complete article when knitted as the fabric was then knitted would be satisfactory and have utility, that an actual trial of the article by putting it on the body of a person was unnecessary to meet the requirements of the law respecting reduction to- practice.
We are unable to agree that the position thus taken is sound in law. When the nature and purpose of the articles are considered, it seems obvious to us that -a test was required to establish actual reduction to practice, and, since none was had, it is unnecessary to discuss other arguments made on his behalf.
It is our view that the conclusion reached by the tribunals of the Patent Office was correct and the decision of'the board is affirmed.