558

### Application of HOOKER.
### .Patent Appeals No. 5589.

United States Court of Customs and
Patent Appeals.
June 28, 1949.

Callard Livingston, Chicago, Ill. (Ivan P. Tashof, Washington, D. C., of counsel), for appellant.

W. W. Cochran, Washington, D. C. (J. Schimmel, Washington, D .C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JOHNSON, Associate Judge.

Four of the twenty claims in appellant's application for a patent for improvements in a Photo-Electric Marksmanship Device were rejected by the Primary Examiner in the Patent Office, the remaining sixteen claims being allowed. That rejection was affirmed by the Board of Appeals of the Patent Office. The basis of rejection was that of lack of patentability over the prior art. The inventor has appealed to this court from that rejection and its affirmation by the Board of Appeals. R.S. § 4911, 35 U.S.C.A. § 59a.

The prior art references cited by the Patent Office tribunals are: Foisy, 2,042,-174, May 26, 1936; Kollmayer et al., 2,089,-901, Aug. 10, 1937; Schlesinger, 2,227,007, Dec. 31, 1940.

The appealed claims read as follows:

"8. In a photo electric marksmanship apparatus, in combination, a source of light modulated in a predetermined manner for defining a target, aimable photosensitive means adapted to be directed at said target, means operably controlled by said photosensitive means for giving an indication when said photosensitive means is aimed at a luminous target the luminosity of which is modulated in substantially the same predetermined manner aforesaid.

"15. In photo-electric target apparatus, in combination, a light source, target-image defining means movably mounted in the path of light from said source, means for moving said image-forming means to cause corresponding motion of the target image defined thereby, means for modulating the target image light.

"16. The combination of claim 15 further characterized by the provision of means movable relative to said source, at least, for selectively maneuvering the target image light with respect to a desired receiving surface.

"24. Photoelectric apparatus including a plurality of sources of fluctuating light having different rates of fluctuation and adapted to be directed upon a receiving member, a photoelectric device actuated by light on said receiving member, electrical translating means actuated by said photoelectric device and selectively responsive only to the rate of fluctuation of a desired one of said sources, and indicating means actuated by said translating means in the selected operation thereof as aforesaid."

The invention comprises a "gun" containing a photo-electric cell, aimable at a movable luminous target image which is superimposed upon an animated motion picture background. The light projecting the target image is modulated or tuned to a high frequency by means of a multi-apertured disc rotating before the light source, producing a high number of interruptions per unit of time. The photo-electric cell in the gun barrel is adjusted to register only light impulses of a frequency or modulation corresponding to that projecting the target image. When the gun is aimed correctly at the target and the trigger depressed, the photoelectric cell is activated and operates an amplifier which in turn actuates a hit-counter unit. Projecting the motion picture background onto the target screen necessarily involves wide fluctuations of light intensity on the screen. But for the tuned or modulated quality of the projected target image light and the cooperating photosensitive means, the gun would possibly register a hit when directed toward light flashes of the motion picture background. Avoidance of such a contingency is considered to be one of the unique features of the invention. The desirability of projecting the target image against the realistic background provided by the motion pictures while retaining the widest freedom of movement for the target image in relation to the background, unobtainable where the photoelectric cell and amplifying means is normally responsive to light of varying fluctuations, is secured by restricting the sensitivity of the photoelectric cell and amplifier to the range of frequency or modulation of the image light source.

The invention is adapted to marksmanship training for members of the armed forces. A mirror is provided which when manipulated by an instructor will project the target image on a screen or wall surface increasing greatly the freedom of target movement deemed suitable for training conditions.

The patent to Foisy describes an apparatus consisting of a phonograph-like turntable to which is strapped a flashlight in horizontal position. The turntable is positioned so that the light beam sweeps across a screen as the device operates. A rifle with a photoelectric cell attached to the barrel is connected in circuit with the turntable. When the rifle is correctly aimed at the spot of light sweeping across the target screen, the photoelectric cell will, when the trigger is pressed, close the circuit operating an electric-magnet which stops the turntable, thus registering a "hit."

The Kollmayer et al. reference is a marksmanship device consisting of a simulated gun, target screen, with movable aircraft images as targets and a background of moving clouds. Photosensitive means are not employed in the device; rather, an

arrangement of trip pins is provided which, when the gun is properly aimed at a moving target, become aligned actuating electro-mechanical means causing the aircraft target image to appear to fall out of the "clouds." The clouds and target are projected onto the screen by means of two rotors positioned in front of a light lens in such a manner that cloud scenes depicted on the one rotor and aircraft representations trunnioned to the other are projected onto the screen as the rotors revolve.

The Schlesinger patent concerns the generation of synchronizing impulses in the transmitter of television systems. The invention employs a rotary disc provided with slots in its surface. A beam of light from a lamp is trained on the rotating disc face. A photoelectric cell positioned behind the disc registers the interrupted light flashes as a high frequency oscillation. The rotary disc also has a second series of slots, somewhat shorter than the first series, and interspersed therewith. The effect of the light passing through the shorter slots is to produce oscillations of a lower frequency, as a modulation of the higher frequency oscillations. The photoelectric cell is connected to an amplifier tuned to the basic frequency generated by the slots. The lower frequency impulses go through a filter and amplifier. The high and low frequency modulated voltage variations are then used as synchronizing signals in television systems.

Claim 8 was rejected on Foisy and Foisy in view of Schlesinger. The board held that the claim does not require that the photosensitive means be responsive solely to a modulated source of light. The examiner had likewise held that the claim does not require the indicating means to be sensitive only to the predetermined modulation of the target light source. The board and examiner both considered that the movement of Foisy's flashlight beam across the screen, or even the action of the lens on the light, broadly viewed was modulation of the light. Thus Foisy, it was held, taught all of the elements of the claim: a source of light modulated in a predetermined manner, aimable photosensitive means, and means operated by the photosensitive means to register a hit.

Appellant's attack on that finding is marshaled principally against the broad interpretation of the term "modulate" which the tribunals below made under the rule of Ex parte Cloyes, 1924 C.D. 64, 328 O.G. 3, that, while an application is pending, claims must be read as broadly as their terms will permit. Essentially, appellant argues that a term in a claim should be defined as the term is used in the specification, and that there is no justification for interpreting it so broadly as to destroy the specification meaning of the term. Unfortunately for the appellant's case, that is not the law. Not only will terms in claims be interpreted broadly, but also limitations not expressed in the claims, though adequately stated in the specification, will not be read into the claim in order to avoid anticipation in the prior art. In re Carr, 54 App. D.C. 283, 297 F. 542; Ellis on Patent Claims, 25; In re Irving L. Stern, 40 F.2d 1000, 17 C.C.P.A. Patents 1234; In re Daniel Gray et al., 53 F.2d 520, 19 C.C.P.A. Patents 745; In re Bryson J. Horton, 54 F.2d 961, 19 C.C.P.A. Patents 871; In re Buckwalter, 75 F.2d 515, 22 C.C.P.A. Patents 1031; In re Wait, 83 F.2d 696, 23 C.C. P.A. Patents 1172; In re Hegan, 97 F.2d 86, 25 C.C.P.A. Patents 1182; In re Hoover, 102 F.2d 849, 26 C.C.P.A. Patents 1138; In re Newton et al., 110 F.2d 110, 27 C.C. P.A. Patents 914; In re Egan et al., 159 F.2d 452, 34 C.C.P.A. Patents 843; In re Erickson, 171 F.2d 307, 36 C.C.P.A. Patents 734. Here appellant has left an important limitation out of his claim; viz., that the photosensitive means responds solely to light modulated in the predetermined manner of the target light. Lacking that limitation, the claim by its very breadth embraces the art of the Foisy patent. The examiner's position, approved by the board, that the projection of Foisy's rotating beam of light on the target screen, or the very effect wrought upon the light by the lens, is modulation broadly conceived, is sound. Furthermore, the claim assigns no significance to the modulation of the target image light, and without more, that feature of the claim may be considered a mere matter of choice unimportant to the device recited by the claim.

The rejection of claim 8 on the basis of Foisy in view of Schlesinger, as held by the examiner, is likewise proper for if it be insisted that the claim demands a target image light source modulated in the manner taught in appellant's specification, the reference Schlesinger teaches such a modulation. The validity of the rejection on the latter ground requires no demonstration here, however, as the rejection on Foisy alone is adequate and proper.

The board held claim 24 to be unpatentable over Schlesinger, stating that "the selective actuation of the photo-electric device by the sources of light indirectly, as from a screen, is not inventive over the selective actuation by the sources of light directly, as in Schlesinger." It considered the essence of the claim to lie in the selective response of fluctuating light of different rates of fluctuation by means of a photo-electric device which controls an indicating means. Schlesinger teaches the generation of high and low frequency light oscillations with a photoelectric means for selective discrimination of the frequencies, the higher being amplified at the basic frequency and led off as a high frequency voltage signal, whereas the lower frequency is filtered and amplified, being led off as a lower frequency voltage signal. Both signals are then used as synchronizing signals in television systems. It should be noted that the claim makes no mention of a target mechanism or aimable photosensitive means.

Appellant contends that Schlesinger discloses but a single source of light whereas claim 24 recites a plurality of sources. The Schlesinger "source" is, in appellant's view, the lamp which emits the beam of light. The board obviously considered the high and lower frequency light oscillations emerging from the rotary disc positioned in front of the lamp as coming from two "sources" of light. A source is "that from which anything comes forth, regarded as its cause or origin," 58 C.J. 811; "that from which any act, movement, or effect proceeds," 39 Words and Phrases, Perm. Ed. p. 515. Concededly the source of the light qua light is the lamp; however, the fluctuations in the light are produced by the slots in the rotating disc. From the longer slots in Schlesinger's rotary disc in operation emerge the high frequency oscillations. From the shorter slots emerge the lower frequency oscillations. But for the slots in the disc, light would not emerge as oscillations. Thus the series of long slots is "that from which" the high frequency oscillation "comes forth, regarded as" the "cause or origin" of that oscillation. From the series of shorter slots "comes forth" the lower frequency oscillation; hence those slots are "regarded as its cause or origin." Each series of slots is "that from which" the light qua oscillations of high or lower frequency as an "effect proceeds." So considered, the rotary disc contains two sources of light oscillations while the Schlesinger device is in operation. We hold that the board was correct in referring to Schlesinger's "sources of light."

The board held that Schlesinger's generation of light having different frequencies is the equivalent of different sources of light. The foregoing development of a broad meaning of "sources" confirms that finding. Appellant contends that "Schlesinger doesn't 'generate' any light whatever." "Generate" means "to beget, produce, to cause to be," 38 C.J.S., Generate, p. 768; 18 Words and Phrases, Perm.Ed. p. 54, 1949 Supplement. That Schlesinger "produces" light oscillations is clearly established, as hereinbefore described. Appellant argues with emphasis that "the wrong emphasis" and "a very oblique interpretation" has been made of Schlesinger's teaching; that to be used in "the claimed structure" would require substantial modification and reconstruction of Schlesinger's structure because "there is nothing whatever in this art to suggest the use of modulated light and selective means for preventing false operations due to extraneous and unwanted disturbing light." It may be said that the claim itself says nothing about "preventing false operations due to extraneous and unwanted disturbing light." As for "the claimed structure," the claim and Schlesinger both embrace the following essential concepts: plural sources of fluctuating (oscillate and fluctuate are synonyms) light; a photoelectric device and electrical translating means selective as to

the rates of fluctuation with an indicating means controlled thereby. The end products of Schlesinger are the high and low frequency modulated voltage variations which are used as synchronizing signals for television systems. The means producing those signals are "indicating means."

A cited patent does not lose its validity as a reference by failure to describe in detail that which is obvious to those skilled in the art. In re Dryer, 162 F.2d 505, 34 C.C.P.A. Patents 1186. It is not a proper defense that a claim is not anticipated by the reference because alterations would be required to carry out the method defined by the rejected claim. And where the elements of the patented apparatus in their normal and usual operation will perform the function defined by appellant's claim, there is no invention involved in doing the thing that was done by the method defined in it. In re Williford, 158 F.2d 997, 34 C.C.P.A. Patents 812.

We see no need for considering the rejection of claim 24 on Foisy in view of Schlesinger as the claim by its terms is directed to a photoelectric apparatus and not to a marksmanship device, and the claim stands properly rejected on Schlesinger alone.

The board affirmed the examiner's rejection of claim 15 based on Kollmayer et al. in view of Schlesinger, and which held that invention did not exist in modulating by Schlesinger's teaching the light of Kollmayer et al. The preamble to the claim, "In photo-electric target apparatus" was held not to be a patentable limitation, the board citing In re Wolfe, 69 F.2d 550, 21 C.C.P.A. Patents 974. We concur in that finding. In re Stacy, 135 F.2d 232, 30 C.C.P.A. Patents 972. 2 Walker on Patents, Deller's Ed., Sec. 274, and cases cited. Where, as here, the preamble does not give meaning and vitality to the claim, an exception to the rule is unwarranted. In re Rockwell, 150 F.2d 560, 32 C.C.P.A. Patents 1177. Inasmuch as the claim fails to state any cooperative relationship of the "means for modulating target image light" with any other element of the claim, the board held that element of the claim to be merely additive and not a patentable limitation. The

appellant asserts that "Only by the mental process of completely ignoring the preamble to claim 15, can the significant limitation to 'target modulating light' be rendered relatively ineffectual in the claim." In the first place, the law is well settled that such a preamble is to be ignored so far as imparting any limitation to the claim proper is concerned; secondly, the "significant limitation to 'target modulating light'" is rendered clearly and decisively ineffectual by the very construction of the claim. There is, as the board correctly held, no cooperative relationship mentioned in the claim to give such a limitation any meaning or vitality. Why should the light be so modulated? The claim supplies no answer, and the claim is the measure of the invention.

Appellant summarizes his position as follows:

"If any of the references to Foisy, Schlesinger, or Kollmayer contained the essential idea of keying or tuning light by modulation for projection and selective rejection of the *unwanted* light, there might be some warrant for the very liberal and loose interpretation of these references which the rejection attempts to justify; but such is not the case." (Italics quoted.)

Claim 15 itself does not contain the essential idea of keying or tuning light for projection *and selective rejection of the unwanted* light. Appellant in urging the patentability of that claim, devoid as it is of any expression of the very relationship of elements which he himself insists is the patentable essence of his invention, is begging the question. Kollmayer et al. and Schlesinger together embrace all of the elements recited in claim 15, and the claim stands properly rejected on those references.

Claim 16 is based on claim 15 adding thereto "means * * * for selectively maneuvering the target image light." That is a functional description, as contended by the solicitor. If claim 16 were to be held allowable, in view of the rejection of claim 15, it would only be because of the addition to the matter of the latter, the "means" specified in the former. Then the "means" would be held to be that which imparts the novelty leading to patentability.

Where the functional description stands at the very point of novelty, and especially where it merely states a problem for solution rather than teaching the method of its solution, it is not allowable. See In re Smellie, 111 F.2d 651, 27 C.C.P.A. Patents 1176, and cases cited. 2 Walker on Patents, Dellers Ed., Sec. 166, 167, pages 790–795. We also agree with the board that invention is not involved in substituting hand maneuverability for automatic movement (Kollmayer et al.) of the target image.

■ For the reasons hereinbefore set out, the claims at bar stand well rejected, and the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.