37 C.C.P.A.(Patents)

**Application of HANSEN et al.**

**Patent Appeal No. 5696.**

United States Court of Customs and Patent Appeals.

June 30, 1950.

Paul B. Hunter, Brooklyn, N. Y. (Thomas M. Ferrill, Jr., New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting method claims 50, 52, 53, 62, and 93, and article claims 55, 58, and 60, of a patent application, serial No. 429,508, filed February 4, 1942, "For High Frequency Power Measuring Device," as lacking invention over the prior art. Twelve article claims and four method claims were allowed.

Claims 55 and 93 are illustrative of the involved subject matter and read as follows:

"55. In apparatus for measuring high frequency power, a resistor having a substantial temperature coefficient, electrical supply means for energizing said resistor to a predetermined operating temperature, means for supplying to said resistor a predetermined fraction of the high frequency power to be measured, thereby additionally heating said resistor, control means in said electrical supply means capable of reducing the power supplied therefrom to said resistor by an amount proportional to the high frequency power dissipated in said resistor, and means for measuring said power reduction.

"93. The method of measuring high frequency power by means of a bridge circuit having one element variable in resistance in accordance with excitation thereof, comprising the steps of exciting said element to a predetermined condition and balancing said bridge in the absence of said high frequency power to be measured, adding said power to said element to vary its resistance and thereby unbalance said bridge, decreasing the original excitation of said element to restore said bridge to balance, and measuring said decrease in excitation, whereby said high frequency power is determined as equal to said decrease in excitation."

The involved claims were rejected on the following cited prior art: Chubb 1,-590,420 June 29, 1926; Fetsch, Jr. 1,901,741 March 14, 1933.

The subject matter of the invention relates to a microwave radio power measuring bridge system adapted for receiving an accurate measuring of microwave energy production at low power levels. The system includes a small filamentary resistance element in which the microwave power is dissipated and its magnitude determined by what is called by appellants a "power substitution method." The resistance element, which may be a short length of extremely fine gauge platinum wire, is selected as being adapted to an appreciable change of resistance with change of temperature. It is stated in the brief of counsel for appellants that the microwave power determination is accomplished as follows:

"(a) initially supplying appreciable direct-current power to this element—an amount in excess of the greatest amount of microwave power (extremely high frequency power) to be absorbed,

"(b) determining the amount of direct-current power initially being absorbed in the element,

"(c) admitting the microwave power to the element in addition to the d. c. power, with a resultant increase of temperature (and resistance) of the very small resistance element,

"(d) reducing the amount of direct-current power supplied to the element to just the extent to restore it to its initial temperature and resistance, and

"(e) measuring the new direct-current power level and subtracting this amount from the initial direct-current power to ascertain the extent of the power reduction, this value being the true measure of the microwave power being taken by the element."

The involved claims were rejected on the patent to Chubb or on the Fetsch, Jr. patent in view of the patent to Chubb. It is stated in the brief of the solicitor that the latter rejection is merely cumulative and if any of the claims are allowable over the Chubb patent alone, such allowance would be justified over the Fetsch, Jr. patent in view of the patent to Chubb.

For the reason that claim 93 is the most specific of the process claims and the only one specifically considered in the brief of counsel for appellants, it is considered

that if that claim has been properly held to be unpatentable, none of the other process claims can be allowed.

It may be noted that claim 93 provides in the first clause thereof for "The method of measuring high frequency power by means of a bridge circuit having one element variable in resistance in accordance with excitation thereof, * * *" and the first two steps of the method are (1) "exciting said element to a predetermined condition and" (2) "balancing said bridge in the absence of said high frequency power to be measured, * * *."

The Chubb patent, which relates to a "comparator," and an object of which is to compare alternating currents with direct currents, or the comparison of two or more independent alternating currents in order to determine the respective values in either instance, discloses the electrical measurements made by means of a bridge circuit having as one element two incandescent lamps which are of variable resistance depending upon the excitation thereof and concerning which it is stated in the specification as follows: "However, incandescent lamps, being readily responsive to the heat of an additional current to thereby vary their resistance values, are preferable by reason of the fact that the herein described comparator is designed for use with feeble currents."

The method of the patent comprises steps of exciting the incandescent lamps to a predetermined condition by means of a battery and balancing the bridge in the absence of high frequency power, as shown in the specification as follows: "In this illustration, the arms of the bridge are shown as normally balanced, thereby producing equal potentials at the points 9 and 11 of the bridge. Connected between the points 9 and 11 is, preferably, a string galvanometer 12, through which no current flows when the bridge is balanced."

The points 9 and 11 contained in the above quotation are the terminals of a line into which the galvanometer is connected.

The next step of claim 93 "decreasing the original direct-current excitation of said element to restore said bridge to balance," it appears to us, is described in the Chubb specification as follows: "It will be apparent that, in place of the galvanometer 12, a direct-reading indicator or measuring instrument could be connected across the bridge at the points of equal potentials so that the amount of deviation of this instrument would then be an indication of the value of the alternating current applied to the arm 5. In this instance, equal potential could be restored across the terminals of the instrument, after the bridge has been unbalanced, by variation of the resistor 16 to restore the ratio of the arms of the bridge."

The last step of the claim is "and measuring said decrease in excitation, whereby said high frequency power is determined as equal to said decrease in excitation." That step, in our opinion, is disclosed as inherent in the Chubb patent for the reason that it merely involves determining how much the resistor 16 of that patent has been adjusted. That is clear, because, as stated in the brief of the solicitor, there would be no point in balancing the resistor without noting the change necessary therein. The final clause in claim 93 is the mere recitation of a function. Inasmuch as the elements of the patented apparatus in their usual and normal operation perform the function defined by the last step of the disputed method claim, the claim is not rendered patentable by that step, for there is no invention involved in doing the thing performed by the method defined by the patented device. In re Stacy, 135 F.2d 232, 30 C.C.P.A., Patents, 972; In re Williford, 158 F.2d 997, 34 C.C.P.A., Patents, 812; see In re Hooker, 175 F.2d 558, 36 C.C.P.A., Patents, 1164.

From what has been hereinbefore set out, we are of opinion that the method steps of claim 93 are readable on the Chubb patent and, therefore, that claim, together with the other process claims, was properly rejected.

It is contended by counsel for appellants that the tribunals below did not properly interpret the Chubb patent for the alleged reason that if the patentee had in mind

the power system of measurement he should have taught that his resistance means should be replaced by a potentiometer arrangement and that appreciable direct-current should be supplied sufficient to heat the incandescent lamps in excess of the maximum anticipated alternating current heating thereof and to teach the advisability of employing a relatively low-sensitivity galvanometer and the need for a direct-current volt meter connected to the bridge so as to indicate the magnitude of the direct voltage across the bridge element which comprises the series-connected lamps. In other words, the contention of counsel for appellant appears to be that the resistance means of the Chubb patent is merely a means for compensating for changes in the internal resistance of the battery. We are unable to agree with such contentions. We think that the patentee was exact in setting out the function of his resistance means. It may be noted in the quotation from the specification bearing on this question that it is expressly stated that the bridge shows a deviation which indicates the value of the alternating current, and then that equal potential can be restored after the bridge has been unbalanced by variation of the resistor. Seemingly, there is no other way in which adjustment of the resistor could restore the balance of the bridge during the application of alternating current.

While the patentee does not set out in so many words that he measures the adjustment of the resistor and thereby computes the alternating current or power, we think it is clear from his specification and drawing that such measurement would be obvious to any one skilled in the art. It is stated in the specification that "If, now, it is desired to measure the value of the alternating current from the circuit 15, this may be accomplished by adjusting the variable resistor of arm 4 to effect equal potentials between the points 9 and 11."

While it appears that the patentee is concerned with the measurement of current rather than power, it was properly pointed out by the board that power is a

function of current and may be calculated therefrom. Therefore, power can be determined by the patentee's measurement of the current.

It may be noted that claim 93 does not set out that the steps therein alone measure the power and therefore it does not preclude further and additional calculations.

■ The introductory part of the claim stating that it is for measuring power is not a limitation on which the claim may be considered patentable. In re Hooker, supra, In re Rockwell, 150 F.2d 560, 32 C.C.P.A., Patents, 1177; In re Stacy, supra. It is clear to us that every physical step appearing in the appealed method claims is anticipated by the Chubb patent and it is immaterial what purpose the patentee had in mind.

There is no limitation contained in the involved method claims to sustain the contention of counsel for appellants that the references "fail to teach the initial excitation or energization of the bridge element to the extent to equal or exceed the maximum power value to be determined." It has been pointed out in the brief of the solicitor that such step is necessarily inherent in the process of the Chubb patent, otherwise it would be impossible to balance the bridge by means of the patentee's resistor. We agree with that statement.

■ The involved article claims, in our opinion, are anticipated by the patent to Chubb for substantially the same reasons which are applicable to method claim 93. The patentee discloses a battery which energizes the two incandescent lamp resistors and his resistor 16 is the means to reduce the power. Claim 58 is similar to claim 55 and the same reason applies for its rejection.

Claim 60 differs from claims 55 and 58 in that it defines a means for maintaining the voltage constant from the source. The patentee, in his specification, states that voltage for the arms of the bridge is constant and supplied thereto from a battery. He notes that the battery is a conventional exemplification of any source of constant

electromotive force. We are in agreement with the tribunals of the Patent Office that the Chubb reference fully discloses the methods and apparatus defined in the appealed claims.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

JOHNSON, Judge (concurring).

The rule of the Hooker, Rockwell, and Stacy cases applies to "introductory clauses" in claims and provides that such clauses are not to be considered as part of the subject matter of the claim. If there is an introductory clause in claim 93, it must be the portion of the claim preceding the first comma, viz: "The method of measuring high frequency power by means of a bridge circuit having one element variable in resistance in accordance with excitation thereof, * * *."

The general rule of those cases that an introductory clause which states only the environment, intended use, or purpose of the *structure* later recited in the claim is not a limitation on the subject matter of the claim is, as the Rockwell case points out, subject to a well defined exception which governs when the introductory clause gives meaning and vitality to the claim. As in Hall v. Shimadzu, 59 F.2d 225, 19 C.C.P.A., Patents, 1288, 1289, 225, 13 U.S.Pat.Q. 259, the exception to the general rule applies here where the so-called introductory clause is essential to the consideration of the improvement alleged to be inventive and defined by claim 93. While I agree that claim 93 does not define a patentable improvement, I believe that the court's statement respecting the "introductory part" of claim 93 should not be construed as a precedent extending the rule of the Hooker, Rockwell, and Stacy cases to method claims, such as claim 93, with introductory clauses which give meaning and vitality to the balance of the claims. See also Kenyon v. Crane, 120 F. 2d 380, 28 C.C.P.A., Patents, 1208; Lawson v. Davis, 129 F.2d 873, 29 C.C.P.A., Patents, 1217.