30 C.C.P.A.(Patents)

*In re* STACY.

Patent Appeal No. 4733.

Court of Customs and Patent Appeals.

April 5, 1943.

Charles W. Parker and Max D. Farmer, both of Buffalo, N. Y., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 4, 5, 6, 16, 20, 22 and 26 of appellant's application for a patent. Thirteen claims stand allowed.

Claims 5 and 6 are method claims and the others are apparatus claims.

Claims 4 and 5 are illustrative of the subject matter of the claims and read as follows:

"4. In a fluid operated motor for drawing metal blanks where if the resistance of the blank to the drawing operation suddenly lessens during the drawing operation, the ram element may jump ahead, a main cylinder, a pull-back cylinder, a ram element operated in opposite directions by fluid pressures in said cylinders, means for supplying operating fluid under pressure to each cylinder and releasing fluid from the other cylinder, alternately, to cause reciprocations of said element and to exert a drawing pressure on said ram element through main cylinder, and means responsive to pressure in said main cylinder for automatically restricting the escape of fluid from the pull-back cylinder while the pressure in the main cylinder is above a predetermined drawing pressure, and for freely passing the escaping liquid while said pressure in the main cylinder is below said predetermined pressure.

"5. The method of drawing metal blanks with dies where if the resistance of the blank to the drawing operating suddenly lessens during the drawing operation, the ram element may jump ahead, which comprises applying drawing pressure to the dies hydraulically, displacing a confined fluid by the drawing movement, releasing the displaced fluid freely when the drawing pressure is below a predetermined point, and materially restricting the escape of said displaced fluid while the drawing pressure is above said predetermined pressure, sufficient to prevent objectionable jumping of the dies by sudden yielding of the blank as the metal is drawn."

The alleged invention relates to a control system in fluid operated motors such as hydraulic rams, especially those employed in metal drawing presses. However, claims 20, 22 and 26 contain no recitals limiting them to fluid motors so employed.

One of the principal objects of the invention is to prevent injury to the dies in a metal drawing operation due to sudden rupture of the metal blank or other similar decrease in resistance to the downward movement of the ram.

The references cited are:
Ernst, 1,927,583, September 19, 1933.
Ernst, 2,067,265, January 12, 1937.
Ernst, 2,190,939, February 20, 1940.
Dinzl, 2,189,858, February 13, 1940.
Ferris, 2,211,692, August 13, 1940.
Ferris, 1,692,771, November 20, 1928.
Clute, 1,985,443, December 25, 1934.
Schafer, 1,972,462, September 4, 1934.
Landis, 1,215,665, February 13, 1917.
Davis, 2,070,004, February 9, 1937.

We do not deem it necessary to describe the inventions in the large number of patents cited, but such of them as we deem necessary to consider will be discussed by us in our consideration of the various claims.

At the outset we would observe that the issues here presented involve highly technical matters involving the operation of a very large number of parts of the device disclosed, and the rule is here applicable that concurring decisions of the tribunals of the Patent Office will not be reversed unless it appears that they were manifestly wrong. In re Wuertz et al., 110 F.2d 854, 27 C.C.P.A., Patents, 1039.

Claims 4, 5, 6 and 16 were rejected by the Primary Examiner as unpatentable over Ernst, 2,067,265, in view of Schafer, Ernst, 1,927,583, or Ferris, 2,211,692.

The Board of Appeals agreed with the examiner, but discussed only Ernst, 2,067,265, and the patent to Schafer, stating that it considered the latter especially pertinent. We are in agreement with this view and in this connection will only discuss these two patents.

The patent to Ernst, 2,067,265, which is the basic patent relied upon, like that of

appellant's application, relates to hydraulic presses for drawing metal blanks. It clearly discloses "a main cylinder," what is termed in the instant claims "a pull-back cylinder, a ram element operated in opposite directions by fluid pressures in said cylinders, means for supplying operating fluid under pressure to each cylinder and releasing fluid from the other cylinder, alternately, to cause reciprocations of said element and to exert a drawing pressure on said element through main cylinder," as recited in appellant's claim 4. The remaining portion of claim 4 reads "and means responsive to pressure in said main cylinder for automatically restricting the escape of fluid from the pull-back cylinder while the pressure in the main cylinder is above a predetermined drawing pressure, and for freely passing the escaping liquid while said pressure in the main cylinder is below said predetermined pressure."

Ernst does not disclose a means, as recited above, responsive to pressure in the main cylinder, as does appellant, and only in this respect does claim 4 fail to read upon the said Ernst patent.

The patent to Schafer relates to hydraulic propulsion systems used in the operation of machine tools. Its specification states:

"This invention is directed to improvements in hydraulic propulsion systems, and is particularly concerned with a hydraulic transmission adapted to meet the conditions obtaining in the operation of machine tools.
\*     \*     \*     \*     \*     \*     \*
"A particularly notable characteristic of the system, as thus organized, is that of providing a back pressure which is proportional to the positive work resistance and, therefore, to the forward pressure. When heavy feeds are used great care must be taken to prevent the tool from pulling ahead. Since the back pressure in this system is proportional to the pressure exerted for feeding the tool, this tendency is automatically overcome."

Without discussing the details of this patent, it is sufficient to say that it discloses means responsive to pressure in the main cylinder of the motor for the same purpose as does the last element of appellant's claim 4, and the question is, would it require the exercise of the inventive faculty to substitute in Ernst, 2,067,265, the means above referred to disclosed by Schafer, for the mechanical means not responsive to pressure in the main cylinder, shown in Ernst.

Upon this point the board in its decision stated: "We consider Schafer especially pertinent. In this patent the member being translated is prevented from pulling away from the propelling instrumentality by use of the valve 14. This valve maintains a higher pressure in the pull-back cylinder 16 when there is greater pressure in the main cylinder 12. To similarly control the operation of the valve 60 in Ernst, No. 2,-067,265, by pressure obtained in the main cylinder 11, instead of by movement of the head 22, would not be a patentable variation of the Ernst press."

Appellant contends that the board erred in holding that the Schafer patent is pertinent and relevant, and calls attention to the fact that in considering the two method claims 5 and 6, the board held that the patent to Clute, which was also cited against said claims, was not pertinent because it was not directed to the drawing of metal blanks. Appellant calls attention to the fact that Clute, like Schafer, related to hydraulic systems generally, and argues that if Clute was not relevant, as was held by the board, neither is Schafer.

Upon this point it is sufficient to say that we are not concerned with the correctness of the finding of the board that Clute was not relevant to method claims 5 and 6 because it is not directed to the drawing of metal blanks. Its reversal of the Primary Examiner with respect to the rejection of these claims as being unpatentable over Clute is not in question here.

It would seem that the board was inconsistent in holding that the patent to Clute was not relevant to the consideration of claims 5 and 6, and reversed the decision of the examiner rejecting these claims upon Clute, but did not reverse it in rejecting said claims upon Schafer among other references, inasmuch as Schafer also did not mention the drawing of metal blanks.

However, we are not called upon to rule upon any inconsistencies which there may be in the board's decision in respect to this matter.

The question before us is whether the patent to Schafer is relevant as applied by the Primary Examiner to claims 4, 5, 6 and 16, and impliedly approved by the board.

■ We are satisfied that the patent to Schafer involves the same art as does appellant's application. The mere fact that

Schafer does not mention the drawing of metal blanks in the use of his device is immaterial with respect to these claims. He states that his device is adapted to meet the conditions obtaining in the operation of machine tools, and appellant's device belongs to that class.

Moreover, the preamble of claims 4 and 16 may not here be considered as limitations. It is structure only that is involved, and the question of patentability must rest upon the structure disclosed in these claims. In re Joseph Dawe, 53 F.2d 543, 19 C.C.P.A., Patents, 728; In re Wolfe, 69 F.2d 550, 21 C.C.P.A., Patents, 974.

That the Schafer patent is a proper reference herein we have no doubt, and we are not satisfied that the board was in error in holding that it would not involve invention to substitute in the device disclosed by Ernst, 2,067,265, the means responsive to pressure in the main cylinder disclosed by Schafer for the mechanical means not so responsive disclosed by Ernst. With this substitution, these claims would, in our opinion, read upon Ernst.

That process claims are not patentable which merely describe the inherent operation of a machine of the prior art is well established. In re Earl Ackenbach, 45 F.2d 437, 18 C.C.P.A., Patents, 769; In re Charles P. Watson, 44 F.2d 868, 18 C.C.P.A., Patents, 712. Claims 5 and 6 in our opinion involve only the inherent, that is normal, operation of the Ernst device as modified by Schafer.

For the reasons above stated we find no error in the holding of the board that claims 4, 5, 6 and 16 are unpatentable in view of the references cited.

The foregoing holding makes it unnecessary to consider the rejection of claims 5 and 6 upon the ground of their being improper method claims.

We next proceed to the consideration of claims 20 and 22 which were held to be unpatentable over the reference Dinzl in view of Ernst, 1,927,583.

Claim 20 is illustrative of these claims and reads as follows: "20. A control device for a fluid actuated motor which comprises a valve having a valve element therein movable between two extreme positions, means for yieldingly and continuously urging said element from one of said positions to the other, means for holding said element in one position, pressure responsive means for releasing said element for movement towards said other position, and additional pressure responsive means for stopping said element in an intermediate position in its movement from said one to said other position, and then releasing it for continued movement into said other position."

The Primary Examiner rejected these claims upon a combination of references, viz., on Dinzl in view of Ernst, 1,927,583, Ernst, 2,190,939, or Ferris; also upon Ernst, 1,927,583, or Ferris in view of Dinzl alone.

The board in this connection discussed only the patent to Ernst, 1,927,583, and the patent to Dinzl.

The patent to Dinzl discloses means for controlling a reversible pump which admittedly accomplishes the same result as the reversing valve claimed by appellant. The patents to Ernst and to Ferris, relied upon, disclose reversing valves, but in them we do not find the element in the claim "additional pressure responsive means" for stopping the valve element in an intermediate position. The examiner seemed to be of the same opinion, for he deemed it necessary to resort to Dinzl to supply the element found lacking in the basic references. In his "Statement" we find the following: "The mere addition in the main references of a piston like 20 of Dinzl for preventing movement of the reversing valves of the main references past neutral so long as working cylinder pressure is high would not involve invention where Dinzl uses the piston to secure the same result."

The board in discussing these claims stated: "We regard claims 20 and 22 to be too broadly drawn to be allowable over Dinzl in view of Ernst No. 1,927,583. The latter patent discloses it is old to reverse a hydraulic press either by operating a reversing valve, as in Fig. 1, or by having the controlling means act on the reversing means of a reversible pump, as in Fig. 4. Broadly, to use Dinzl's control to operate a reversing valve, instead of the reversing means of a reversible pump, would not amount to invention."

We are not convinced that the Patent Office tribunals erred in this holding. The claims are broad, and do not exclude a con-Whether it would be obvious to one skilled trol means such as is disclosed by Dinzl. in the art to substitute for the reversible pump shown by Dinzl, a reversing valve shown in the references relied upon, with the control means shown by him applied

thereto, is a question upon which there might be differences of opinion, but as we are not convinced that the board erred in this respect, its decision will be affirmed.

Lastly, we come to the consideration of claim 26, as to which there were two grounds of rejection by the Primary Examiner. He rejected it first as drawn to an old combination relying upon Ernst, 1,927,583 or 2.190,939, and second, as lacking patentability over Ernst, 1,927,583, in view of Landis and Davis.

The board affirmed both grounds of rejection.

We are unable to agree that claim 26 recites an old combination. That the patents to Ernst relied upon disclose all of the elements of the claim in combination except the use of a resilient switch may be conceded, but in our opinion the use of such a switch involves a new combination of elements not shown in the prior art. By the use of this switch appellant has eliminated the involved circuits and relays disclosed by Ernst, but he obtains the same result as did Ernst.

We are unable to agree with the examiner's view that the novelty of the claim, if any, lies in the bowed switch per se, and that the claim should have been limited to the switch alone and presented in a separate application. This view was approved by the board.

Claim 26 does not indicate any novelty in the resilient switch per se, nor does his application. On the contrary, as properly held by the examiner, the type of switch described in the claim was old as shown by Landis.

■ However, by the use of this old element in the combination claimed, appellant has been able to omit several parts necessary to the combination disclosed by Ernst, and thus effects an old result in a new and material way. N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 6 Cir., 25 F.2d 659. Glade v. Walgreen Co. et al., 7 Cir., 122 F.2d 306.

The element of a resilient spring being old, if it involved invention to substitute it for the complicated circuits and switches of Ernst, we do not see how such invention could be protected except in terms of a combination claim.

For the reasons stated we cannot agree that claim 26 is for an exhausted combination.

This claim was also rejected as lacking patentability over Ernst, 1,927,583, in view of Landis and Davis.

As hereinbefore stated, Landis discloses a resilient switch such as is employed by appellant, and his patent is for such a switch per se.

The patent to Davis is for lubricating apparatus and discloses a pressure controlled switch in connection with which a compression coil spring is utilized.

It appears that the patent to Landis was issued in 1917. The patent to Ernst relied upon was issued in 1933. It seems that Ernst was a prolific inventor in the involved art, for three patents involving the general subject matter before us appear in the record, and in patent 1,927,583, he refers to three other patents issued to him.

While of course not controlling here, it would seem that if the employment of a resilient switch in the combination here claimed was obvious to one skilled in the art, Ernst would have utilized this simple device instead of the circuits and switches disclosed by him, to secure the same result as is secured by appellant.

While the spring disclosed by Landis was patented, as hereinbefore noted, in 1917, appellant appears to have been the first to conceive that it could be applied in such a combination as is here involved, or any combination related thereto.

■ It is our opinion that patentability of claim 26 is not negatived by the cited references.

For the reasons stated the decision appealed from is affirmed with respect to claims 4, 5, 6, 16, 20 and 22, and reversed with respect to claim 26.