37 C.C.P.A.(Patents)

**Application of JAEGER et al.**

**Patent Appeals No. 5591.**

United States Court of Customs
and Patent Appeals.

Sept. 30, 1949.

Corbett, Mahoney & Miller, Columbus, Ohio (John J. Mahoney and Eugene J. Mahoney, of Columbus, Ohio, of counsel), for appellant.

W. W. Cochran, Washington, D. C. (E. L. Reynolds, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the Primary Examiner of claims 55 and 56 of appellants' application for patent, Serial No. 494,222, filed July 10, 1943, entitled "For Improvements in Sealing Means for Mixers or the Like."

While the claims are not limited to sealing means for a concrete mixer, that appears to be the only type of mixer mentioned eo nomine in the specification.

There were two groups of claims, and the respective groups were examined under the practice of dual prosecution. General jurisdiction of the case was in Patent Office Division 32, and numerous of the claims were prosecuted before the Primary Examiner in that division, several of them being allowed. Upon appeal the board allowed others which that examiner had rejected.

It is unnecessary to set forth the claims rejected by the examiner in Division 32, since no appeal as to them was taken to this court.

The two claims before us were passed upon and rejected by the Primary Examiner in Patent Office Division 52, and his rejection was affirmed by the board, the rejection being based upon lack of invention over prior art. The reference relied on by the examiner and the board is a patent, No. 2,013,499, issued to one John W. Meckenstock, September 3, 1935.

The appealed claims read:

"55. Flexible sealing means for sealing the space between the opposed spaced annular flat faces of a pair of cooperable rotatable and non-rotatable members of a mixer structure in which the members are arranged in tandem relation and in which a lubricant supplying fitting is in operative communication with said space for supplying lubricant under pressure to the space; said sealing means including a pair of transversely spaced normally flat ring-like sealing members formed from lubricant and mix-resistant flexible material, said members being independently and removably attached to one of said spaced annular

flat faces and having portions thereof lying in spaced substantially flatwise position between said annular faces and engaging said faces, and one of said last-named portions terminating in an annular lip extending inwardly to the level of the inner surfaces of the cooperable rotatable and non-rotatable members whereby with the lubricant in the space to completely seal the space against the ingress of foreign material into said space.

"56. Structure according to claim 55, wherein means is provided for releasably and independently attaching the ring-like sealing members to one of said spaced annular flat faces."

It is noted that claim 56 is dependent upon claim 55, which is directed to the sealing means per se.

Following the appeal to the board, the examiner, in his official statement, said:

" * * * applicants' alleged invention relates to a sealing means in a mixer, ordinarily a concrete mixer. The gasket means ordinarily is synthetic rubber and is in this case used between the opposed faces of a rotatable mixing drum and a non-rotatable material receiving hopper. The seal is so designed that it is intended to seal the space between the plates against the entry of concrete mix, especially crushed stone, which would have a tendency to join the relatively movable plates. In Fig. 6 the non-rotatable member 21 has an annular flat face 21a which opposed the flat face 26a of the rotatable member 26. The stationary plate 21 is provided with concentrically spaced recesses 23a, 23c into which are removably mounted flat ring-like sealing or gasket members 55, 56. These sealing members extend radially inwardly on an oblique to make sealing contact with the movable member 26. The radially inner sealing member 55 terminates in an annular lip which extends to the inner level adjacent numeral 55 of the stationary member 21 and movable member 26. A lubricating member 25 is axially mounted between the sealing members 55a, 56a. The space between the two sealing members 55, 56 is adapted to be filled with lubricant. The sealing rings are releasably held in place by wire rings 57."

The hopper, as defined in the application, is provided with an annular flange which faces a corresponding flange on the drum, the flange being provided with two spaced annular recesses or grooves in each of which is anchored one edge of a flat rubber ring. Those rings originally extend at an angle to the flange with the upper edges of the rings substantially flush with the inner surfaces of the drum and hopper. When the hopper and drum are in operative relationship, the outer edges of the rings are so bent that they lie along the surface of the flange. A lubricant is admitted through a fitting into the space between the two rings. On behalf of appellants, it is claimed that the lubricant thus admitted effects the free movement of the rotatable and non-rotatable members by reducing friction on the parts, simultaneously providing efficient sealing means which prevents the escape of the lubricant by trapping it between the opposed faces or surfaces of the relatively rotatable members.

The patent of Meckenstock relates to sealing means for a suction-pump, an example being a pump of the kind used "for pumping solids, such as sand or gravel, in a suspension liquid."

The casing of the suction-pump, as described in the specification, and illustrated in the drawings, comprises an annular, peripheral section provided about its inner periphery with a channel opening toward the center of the section. The casing has two sides or ends and a central suction opening is located at one side, being secured at its circumferential portion by bolts to a flange of the outer section. The pump also comprises an impeller located in the casing and secured to an end of a shaft journaled in a tubular portion of the casing-section and driven by any suitable means. The impeller operates to exert suction, material being drawn into the pump casing and driven by blades of the impeller against the inner peripheral portion of the casing along which the material travels to the outlet of the pump. Grit, such as sand, being pumped is carried into the spaces between the impeller and the side walls.

Meckenstock's specification states:

"It is * * * desirable to seal the spaces between the impeller and the side walls of the casing and this is one of the purposes of the present invention, the means shown for this purpose comprising inner and outer spaced-apart sealing rings * * *.

"Each sealing ring is formed of resilient elastic material, such as soft rubber, the rings being formed either of a single ring section or, as shown, of a plurality of flatwise opposed ring sections of material * * *."

With reference to the location of the sealing means in the pump the Meckenstock patent states: "Where sealing means are incorporated in a pump for pumping liquid free of grit, the sealing means would preferably be located close to the center of the pump as shown of the ring 35 in Fig. 5, for the sake of economy of construction."

In affirming the decision of the Primary Examiner, the board said: " * * * We agree with the position taken by the Examiner. The patentee Meckenstock discloses sealing means analogous to those defined in the claim and can be differentiated therefrom only in that one of the ring-like sealing means is not positioned between the cooperating rotatable and nonrotatable faces so that the free end of its flat surface terminates exactly at the level of the inner surfaces of the cooperating faces. This difference, in our opinion, at the most involves but a question of choice in locating the sealing ring where it is likely to produce the most efficient results in the structure. The dependent claim 56 does not recite any additional structure not disclosed by Meckenstock."

In the reasons of appeal to us appellants allege error, using different forms of expression. Briefly, the actually pertinent allegations, which we have carefully analyzed and considered, comprehend nothing more than the contention that the structural distinctions between the application and the reference patent constitute invention, being beyond the exercise of mere skill.

We find ourselves unable to agree with appellants' contention.

From the description and drawings of record, it appears that the inner edge of appellants' sealing ring extends to the level of the inner surfaces of the drum and hopper, while the edge of the Meckenstock sealing ring stops short of the edge of the impeller plate, but such change seems to us to be a matter of choice obvious to the skilled mechanic.

So far as the feature of means to supply lubricant under pressure to the space between the sealing rings is concerned, no particular kind of lubricant is defined and the reference patent provides means in the form of a pipe to supply "water or other suitable fluid" to the sealed space. Water itself acts as lubricant under some circumstances and, aside from this, "other suitable fluid" would include lubricating oils.

In the brief for appellants, there is some argument based upon the fact that Meckenstock flushes out the spaces between his sealing rings and the impeller of his pump, while appellants teach that the lubricant in their mixer serves to prevent any material from passing the sealing rings. We find nothing in the appealed claims which defines this distinction, and we, of course, are limited to what is claimed in considering the question of patentability.

Another argument in the brief on behalf of appellants is that the Meckenstock patent is in "the pump art," while the application is in the "concrete mixer art," and it is argued that these are non-analogous arts. It has been stated hereinbefore that while the application names only a concrete mixer it is not so limited in its title, and it is obvious that in the appealed claims appellants sought to cover sealing means for more than concrete mixers— at least, in the introductory clause the broad expression "mixer structure," without any modification of "mixer," appears. Incidentally, it may be said that as an introductory phrase "mixer structure" does not constitute a limitation. See In re Stacy, 135 F.2d 232, 30 C.C.P.A., Patents, 972, and pertinent cases therein cited.

It is structure which is here involved, specifically sealing means for a mixer. The sand or gravel which, in suspension in a liquid, passes through a rotating impeller in the Meckenstock pump obviously is mixed in passing. So, the function of the device upon which the sealing means of appellants operates appears to be literally met by the reference.

█ We are not convinced that the board erred in affirming the Primary Examiner's rejection of the appealed claims, and its decision is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.

37 C.C.P.A.(Patents)
### Application of ST. PAUL HYDRAULIC HOIST CO.

Patent Appeals No. 5623.

United States Court of Customs and Patent Appeals.

Sept. 30, 1949.

Andrew E. Carlsen, Minneapolis, Minn., for appellant.

W. W. Cochran, Washington, D. C. (Walter J. Derenberg, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

GARRETT, Chief Judge.

